The COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Complainant,

v.

Robert C. BRADFIELD, Respondent.

No. 90–283.

Supreme Court of Iowa.

June 20, 1990.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

Michael W. Liebbe, Davenport, for respondent.

PER CURIAM.

A complaint was filed by the Committee on Professional Ethics and Conduct of the Iowa State Bar Association charging respondent Robert C. Bradfield with failure to file timely state and federal income tax returns. The complaint further alleged that respondent filed a false answer on a combined Statement and Questionnaire from the Client Security and Attorney Disciplinary Commission on two occasions and on one occasion intentionally did not file the questionnaire on time in an attempt to conceal the filing of an untimely income tax return.

Following a hearing, the Grievance Commission (commission) found that respondent was delinquent in filing his 1983, 1984 and 1985 state and federal returns and his 1986 federal return. The commission found that respondent answered his 1985 questionnaire falsely regarding his 1983 tax return but rejected claims that he made a false statement in 1987 and intentionally concealed untimely filings in 1988. The majority of the commission recommended that respondent's license be suspended for a period of three months.

One commissioner specially concurred stating that had this case only involved untimely tax returns, he would have recommended a reprimand. Another commissioner filed a special concurrence and dissent recognizing that the previous decisions of our court compelled a suspension. This commissioner questioned the appropriateness of the present method of discipline for this type of case and suggested a minor, preferably private, reprimand, a lengthy supervised probation and a mandatory restitution of taxes be imposed in its stead. He suggested that respondent be supervised by employees of our Client Security Commission.

Respondent has practiced law in Scott County since his admission to the bar in 1973. He practices primarily in the area of real estate but handles some divorce and criminal cases as well. The record indicates that he is competent in these areas and practices law in a professional manner. Respondent refers cases in areas outside his expertise to other attorneys. Respondent cooperated fully with the Committee on Professional Ethics and Conduct.

Respondent agreed that he had filed seven untimely income tax returns. He filed the late returns because he did not have the funds to pay the tax due. He testified that in 1982 and 1983 he accrued unusual expenses and debts as the result of a marriage dissolution. He also testified that he never fell behind on any child support payments since he considered his two children

to be most important. Respondent has significant personal and financial problems.

Respondent's filing of three questionnaires was challenged. He indicated that he had filed his 1983 tax returns when he filed his 1985 questionnaire on March 4, 1985. His 1983 state return was filed just before March 4, but his federal return was not filed until July 1985. He testified that he had prepared the return and written the checks prior to filing the questionnaire. He stated that he thought he was going to have the money to pay the tax due on the federal return and had not intentionally lied on the questionnaire. The money did not materialize, but he did not amend his answer on his questionnaire. We agree with the commission's finding that he did not answer this questionnaire truthfully.

The commission also questioned respondent about his 1987 questionnaire which covered his 1985 taxes. Before his questionnaire was filed, respondent had filed his 1985 state returns late. The commission accepted his explanation that he had filed his federal return in February without payment and later refiled the return, again without payment, because the Internal Revenue Service had lost his original copy. We accept the commission's findings as it had the opportunity to evaluate respondent's credibility.

On May 13 respondent filed his 1988 questionnaire stating that he had filed his 1986 tax returns. His 1986 federal tax return was not filed until May 12, 1988. The commission accepted respondent's testimony that he delayed filing the questionnaire because he wanted to get his tax returns filed before he sent in the questionnaire. He denied an intent to deceive the Client Security Commission on the questionnaire. The commission found that respondent intentionally did not file the questionnaire because he wished to conceal the untimely filing of his 1986 income tax returns. We accept the commission's findings.

We have often stated that a failure to file timely income tax returns and false answers on attorney questionnaires violates our code of ethics. *See, e.g., Com-* *mittee on Professional Ethics and Conduct v. Baudino,* 452 N.W.2d 455, 456 (Iowa 1990); *Committee on Professional Ethics and Conduct v. Jackson,* 429 N.W.2d 122, 122–23 (Iowa 1988); *Committee on Professional Ethics and Conduct v. Morris,* 427 N.W.2d 458, 460 (Iowa 1988). We do not believe that financial problems can serve as an excuse for these failures.

The real issue is the appropriateness of the sanction. We conclude that respondent's seven untimely returns and one false statement on the questionnaire fall within the range of behavior which should result in a four-month suspension. Accordingly, we suspend respondent's license indefinitely with no possibility of reinstatement for four months from the filing of this opinion. This suspension shall apply to all facets of the practice of law. Iowa Sup.Ct.Rule 118.-12. Any application for reinstatement shall be governed by Iowa Supreme Court Rule 118.13.

Costs are taxed to the respondent pursuant to Iowa Supreme Court Rule 118.22.

LICENSE SUSPENDED.

All Justices concur except SCHULTZ, and CARTER, JJ., who dissent, and LAVORATO and NEUMAN, JJ., who take no part.

SCHULTZ, Justice (dissenting).

I disagree with the sanction imposed in the majority opinion. Respondent suffers from financial difficulties arising from debts owed to the state and federal government for back income tax. This is not a tax fraud case. Neither government entity has accused respondent of cheating on his tax returns nor have either charged respondent under statutes requiring the filing of timely tax returns. A failure to file timely tax returns should not always require the sanction of suspension.

Respondent has failed in his personal money management, resulting in part from the economic repercussions of a failed marriage. Respondent has diligently paid child support. He has not raised his professional fees to make a quick recovery at the expense of his clients. He has referred

cases that would have resulted in higher fees when he felt the case required special expertise. It is obvious that respondent places his responsibility to his children and his clients before his tax obligation. His financial and marital failures are not violations of professional ethics.

The remaining wrongdoing is an untruthful statement on the 1985 questionnaire regarding the filing of respondent's 1983 tax return. I agree that we cannot accept respondent's statement that he had prepared the tax return, written the check and had planned to file the return as soon as he had the money, as a complete excuse for his false answer. The totality of the circumstances somewhat mitigates the untruthful answer, however.

In making the recommendation of suspension, the majority of the members of the commission relied upon our holdings in similar cases. In a special concurrence, one of the members noted that while the commission's recommendation is consistent with prior decisions of our court involving false answers on questionnaires and untimely tax filings, the prior tax decisions would appear inconsistent with our decision in *Committee on Professional Ethics and Conduct v. McClintock*, 442 N.W.2d 607 (Iowa 1989). In *McClintock*, the lawyer who misappropriated partnership funds was only given a reprimand. The commissioner has a valid point. Misappropriation of funds bears directly on a lawyer's fitness to handle client-owned trust funds. Procrastination in filing tax returns bears only a distant relationship to a lawyer's fitness to practice.

Another member of the commission wrote a lengthy dissent challenging the appropriateness and the deterrent effect of our previous sanctions on this type of ethical violation. This commissioner stated in part:

> I question whether or not our present method of discipline is having the desired effect of deterrence. I also question whether or not the suspension of an attorney's license to practice law for the untimely filing of a tax return is the most appropriate sanction in view of the desired goal.
>
> I suspect that it is our primary duty to protect the public from unscrupulous behavior by attorneys and to eliminate from the profession attorneys who are unfit to practice.
>
> If our Commission is, indeed, compelled to follow prior precedent, Mr. Bradfield's license to practice law must be suspended for three months. There exists many very similar cases with very similar dispositions.
>
> I find, however, more purpose in suspending an attorney's license for dishonesty, in this case the false Questionnaire response, than for untimely filing of tax returns. As stated previously herein, but for the mandatory responses required of all nonexempt attorneys in the State of Iowa, this particular falsity would not have arisen. The double standard which appears to apply to members of the legal profession is bothersome, particularly when it applies to instances which have no apparent effect upon the public or upon the representation of one's clients. I am not supportive of, nor do I condone in any respect, Mr Bradfield's late filing and, much more importantly, the false response on the Questionnaire. However, our focus, it seems to me should be to eliminate harm to society and to insure fitness for the practice of law. Both of these factors seem to be unaffected by the infractions committed by Mr. Bradfield.
>
> In this instance and all others similar to it, I would prefer to see a system whereby the attorney would receive a minor reprimand, preferably nonpublic so as not to impair his (her) earning capacity, mandatory restitution (in this case more than $70,000.000) and a very lengthy probationary period supervised by an employee or employees newly hired by the Client Security and Attorney Disciplinary Commission of the Iowa Supreme Court.

I agree with the commissioner's analysis. I stand by the dissent in *Committee on Professional Ethics and Conduct v. Baudino*, 452 N.W.2d 455, 461–64 (Iowa 1990).

In selecting the appropriate sanctions we should also consider their effect on the lawyer. We need not stoically follow mathematical formulas derived from past sanctions for the same misconduct. Here, the respondent is caught in a penalty-interest web created by tax delinquencies and deficiencies. He does not have the financial capability to secure loans to extricate himself. He can pay the taxes only from earnings which are also subject to taxes. A suspension of his license will be more than a simple setback; it will be a personal disaster. While we may shrug this off as his responsibility, we should not impede his recovery unnecessarily. We can still protect the public and deter this conduct by more appropriate sanctions which would allow respondent the opportunity to pay his taxes and recover financially.

CARTER, J., joins this dissent.